IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:22-MC-00002-KDB

| | |
|---|---|
| THOMAS L. MASON, M.D., STEVEN G. FOLSTAD, M.D., AND MID-ATLANTIC EMERGENCY MEDICAL ASSOCIATES, P.A., <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF JUSTICE-CIVIL DIVISION, COMERICAL LITIGATION BRANCH, AND UNITED STATES DEPARTMENT OF JUSTICE-CRIMINAL DIVISION, <br><br> Defendant. | **ORDER** |

**THIS MATTER** is before the Court on Plaintiffs' Motion to Compel (Doc. No. 1), which Defendants oppose (Doc. No. 8). The Court has reviewed the motion and considered the parties' briefs, exhibits and oral arguments. For the reasons discussed below, the Court will **DENY** the Motion.

## I. RELEVANT BACKGROUND

This matter arises out of extensive civil and criminal litigation under the False Claims Act ("FCA"), 31 U.S.C. §§ 3729, et seq., against Health Management Associates ("HMA"), alleging that HMA hospitals were improperly admitting patients from their Emergency Departments when medically unnecessary. This alleged wrongdoing led to eight separate *qui tam* suits, including the case filed by Plaintiffs in this Court. *See U.S. ex. Rel Mason et al. v. HMA, Inc.*, 3:10-CV-472-GCM (W.D.N.C.). Eventually, after its own investigation, in December 2013 the Department of

1

Justice ("DOJ") intervened in all eight FCA *qui tam* cases. In January 2014, the cases were consolidated in a Multi-District Litigation ("MDL") and ultimately were resolved with settlements in 2017 and 2018. Because of the DOJ's intervention, from about 2010 to 2018 Plaintiffs were barred from taking any substantive discovery in their *qui tam* action.[1]

However, Plaintiffs' FCA retaliation claim was not resolved by either settlement and was remanded to this Court in February 2019. In January 2021, Plaintiffs issued a *Touhy* request and an accompanying subpoena to the DOJ requesting the production of information from the Commercial Litigation Branch of the Civil Division to assist in the remanded litigation. That initial subpoena was withdrawn and replaced with a more limited subpoena. (Doc. No. 1-1). The revised subpoena requested the DOJ to provide documents in response to three requests:

> 1. All presentations made to the DOJ, or any USAOs, concerning HMA, EmCare, MEMA and the conduct of any third party in the consolidated cases, whether made by or on behalf of HMA or EmCare, or by third parties, including but not limited to, PowerPoint presentations, memos, white papers, including all email communications and documents included in or referenced in such materials.
>
> 2. All reports of witness interviews (non-privileged), witness statements, deposition transcripts, and documents produced by the witness or deponent or used as exhibits during the interview or deposition of HMA or EmCare or any physician, medical personnel, or other person involved in the investigation of the consolidated cases, including but not limited to the Relevant Persons. These include, but are not limited to, the interviews of Steve Bartow on November 21, 2013 and April 8, 2014; the interview of Terry Meadows on November 19, 2013; the interview of Angie Marchi on November 19, 2013; the interview of Britt Reynolds on December 12, 2013; the interview of Dale Armour; the interview of Craig Walker; the interview of Stan McLemore on or around October 5, 2016; the interview of Scott Giles, the interview of Lisa Gore; the interview of Erika Powell; and all interviews or depositions

---

[1] The former United States Attorney for the Western District of North Carolina, R. Andrew Murray, publicly thanked the Plaintiffs for their assistance in resolving the FCA allegations against the HMA and EmCare Defendants. *See* https://www.justice.gov/usao-wdnc/pr/two-charlotte-area-hospitals-among-260-million-globalsettlement-between-hospital-chain; https://www.justice.gov/usao-wdnc/pr/emcare-inc-pay-298-millionresolve-false-claims-act-allegations. One would think that the DOJ's expression of gratitude would include reasonably assisting Plaintiffs in their litigation.

2

related to the Carlisle plea and SOF including, but not limited to, Drs. Cliff Cloonan, Cloyd Gatrell, Scott Rankin and Anthony Guarancino.

3. All reports of witness interviews (non-privileged), witness statements, deposition transcripts, and documents produced by CHS Crossover Witnesses or used as an exhibit during the interview or deposition of CHS Crossover Witnesses, taken in the CHS Qui Tam investigation.

*Id*.

Plaintiffs also served the DOJ Criminal division with a *Touhy* request and an accompanying subpoena. (*See* Doc. No. 1-3). That subpoena sought:

1. All presentations made to DOJ Criminal, or any USAOs, concerning HMA, EmCare, MEMA, and the conduct of any party in the Consolidated cases, whether made by or on behalf of HMA or EmCare, or by third parties, including but not limited to, PowerPoint presentations, memos, white papers, including all email communications and documents included in or referenced in such materials.

2. All reports of witness interviews (non-privileged fact work product), witness statements, deposition transcripts, and documents produced by the witness or deponent or used as exhibits during the interview or deposition of HMA or EmCare (as defined in the subpoena) involved in the investigation of the consolidated cases, including HMA National Custodians, EmCare National Custodians, HMA Non-National Custodians limited to Certain Hospitals, and EmCare Non-National Custodians limited to the same Certain Hospitals. These include, but are not limited to, all interviews or depositions related to the Carlisle plea and SOF including, but not limited to, Drs. Cliff Cloonan, Cloyd Gatrell, Scott Rankin, Anthony Guarancino, Ms. Jackie Meyer, Mr. John Kristel, and any other physician, medical personnel, or person involved in the Carlisle criminal investigation.

*Id*.

The DOJ responded by granting in part and denying in part both requests. Both divisions determined that they would only authorize disclosure of the transcript of the deposition of Britt Reynolds, who is deceased. (*See* Doc. Nos. 1-4, 1-5).

As for the other materials sought by Plaintiffs, the DOJ determined that disclosure was inappropriate because: (1) Plaintiffs' requests sought information available from other sources – specifically, from HMA and EmCare in the underlying civil action; (2) Plaintiffs' requests were

3

too broad and unduly burdensome; (3) Plaintiffs' requests sought information protected as work product under Federal Rule 26(b)(3)(A), and Plaintiffs' failed to show that they had a substantial need for that material and that they could not obtain the substantial equivalent of the information sought by other means without undue burden; (4) Plaintiffs' sought certain information prepared solely for the purpose of settlement and had not made the required heightened showing to obtain such information; (5) Plaintiffs' requests sought some information that they had obtained from other third parties; and (6) Plaintiffs' requests sought some information for which DOJ has no responsive records. (*See* Doc. No. 1-4, 1-5).

Following the DOJ's response, the parties tried to resolve the outstanding issues. Plaintiffs further limited their *Touhy* requests, made requests for clarifications, responded to the arguments in the DOJ letter, and requested a meet and confer to attempt to avoid litigation over these issues. Plaintiffs and the DOJ representatives then participated in multiple meet and confer conference calls. In these calls, Defendants reiterated their position that Plaintiff had not met the required standard of Rule 26(b)(3)(A)(ii) because "while you have made general allusions to your efforts to contact these individuals and difficulties you have had obtaining relevant facts, you have not substantiated those statements with any concrete information to us as to why the facts are important and, in particular, why you are unable to obtain the facts from the individuals with first-hand knowledge." (Doc. No. 1-7). DOJ's counsel further noted that it had shown by its production of the Reynolds deposition materials a willingness to produce documents and stated that "if you are interested in doing so, the Government is willing to reconsider your request(s) under Rule 26(b)(3)(A)(ii) in light of any additional information you provide." *Id*.

4

In sum, after these discussions, the parties have resolved many of the outstanding requests, leaving still in dispute one deposition and 58 interview summaries involving 28 individuals.[2]

## II. LEGAL STANDARD

It is well-established that federal agencies have the authority to regulate the disclosure of their information. In *United States ex rel. Touhy v. Ragen*, the Supreme Court held that a federal employee could not be held in contempt for refusing to produce subpoenaed documents, where his refusal was based on regulations prohibiting the disclosure of official information without prior authorization. 340 U.S. 462, 468 (1951). Further, the Fourth Circuit has held an agency's refusal to produce subpoenaed documents is protected under sovereign immunity. *COMSAT Corp. v. Nat'l Sci. Found.*, 190 F.3d 269, 277 (4th Cir.1999) (citing *Boron Oil Co. v. Downie*, 873 F.2d 67, 71 (4th Cir.1989)).

When a federal agency is a non-party to the litigation at issue, the Administrative Procedure Act ("APA") provides the "sole avenue" for review of its refusal to comply with a subpoena. *COMSAT*, 190 F.3d at 274. Because an agency's refusal to comply with a subpoena "is essentially a policy decision about the best use of the agency's resources," courts "defer to the agency's judgment, recognizing . . . that 'federal judges—who have no constituency—have a duty to respect legitimate policy choices made by those who do.'" *Id.* at 278. (quoting *Chevron U.S.A. Inc. v. NRDC*, 467 U.S. 837, 866, 104 S. Ct. 2778, 81 L. Ed. 2d 694 (1984)). Accordingly, a federal court may order a non-party governmental agency to comply with a subpoena only when it "has refused production in an arbitrary, capricious, or otherwise unlawful manner." *COMSAT*, 190 F.3d at 277.

---

[2] There has been some confusion in the filings over the exact materials still at issue, but the parties represented before the Court at the hearing on this motion that one deposition and 58 interview summaries involving 28 individuals were still at issue.

5

A federal agency's decision is arbitrary and capricious if it relied on "factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view of the product of agency expertise." *Motor Vehicles Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

### III. DISCUSSION

Under 28 C.F.R. 16.26(a)-(b), the DOJ must consider two factors in determining whether to produce documents under a *Touhy* subpoena. First, should disclosure be made under the rules of procedure governing the case, here the Federal Rules of Civil Procedure. And second, does any privilege, most typically the privileges protecting ongoing law enforcement investigations, make production inappropriate. The second factor was inapplicable to the DOJ's analysis because the relevant investigations had concluded and no law enforcement privilege applied to the requests. Thus, the DOJ's analysis focused on the first factor exclusively.[3]

The parties appear to agree that the information requested (the agency's employees' statements in their interview notes about what the various witnesses said)[4] is all (or nearly all) fact as distinguished from opinion work product. Fact work product consists of documents that, as here, do not contain the attorney's or investigator's mental impressions. *See In re Grand Jury Proceedings*, 401 F.3d 247, 250 (4th Cir. 2005). However, Federal Rule of Civil Procedure 26(b)(3) does not require the production of fact work product in discovery, except if the materials

---

[3] The DOJ relied on additional rationales in its denial letters, some of which were argued in the briefs. (*See* Doc. Nos. 1, 1-4, 1-6, 8, 10). But based on the limited materials still at issue, those other rationales are no longer relevant to this Court's review.

[4] As noted above, there is one deposition at issue that reflects a witness' direct statements.

6

Case 3:22-mc-00002-KDB   Document 12   Filed 03/10/22   Page 6 of 13

are generally discoverable under 26(b)(1) and "the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A)(ii). The burden of overcoming this work product protection is on the party seeking discovery. *United States v. Regan*, 281 F. Supp. 2d 795, 804 (E.D. Va. 2002).

Applying this standard, the DOJ determined that the subpoenaed documents were work product and that Plaintiffs failed to establish a substantial need. The DOJ stated Plaintiffs had failed to attempt "to obtain information directly from the persons whom the Government interviewed, let alone [show] that such information could not be provided to you by those individuals themselves absent 'undue hardship'" (Doc. No. 1-4, at 7-8, Doc. No 1-5, at 6). As noted above, the question before the Court is whether this determination was arbitrary and capricious, not whether the Court disagrees with it.[5]

### I. Are the materials protected as work product?

Federal Rule 26(b)(3) defines work product as "documents and tangible things that are prepared in anticipation of litigation or for trial." Fed. R. Civ. P. 26(b)(3)(A). When determining whether a document has been "prepared 'in anticipation of litigation,' most courts look to whether the document was prepared because of the prospect of litigation. 'The prospect of litigation' refers to whether the document's preparer 'faces an actual claim or a potential claim.'" *In re Grand Jury Subpoena No. 2013R00691-009*, 201 F. Supp. 3d 767, 772 (W.D.N.C. 2016) (quoting *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Murray Sheet Metal Co., Inc.*, 967 F.2d 980, 984 (4th Cir. 1992)).

---

[5] As a threshold matter, it is undisputed that Plaintiffs followed the required *Touhy* procedures under 28 C.F.R. § 16.22(c)-(d) when requesting the materials and that the DOJ's refusal to comply was a final action for purposes of the APA and this litigation. *COMSAT*, 190 F.3d at 274 (An agency action is "final" when it "signals the consummation of an agency's decision-making process and gives rise to legal rights or consequences.").

This work product protection applies to documents created by an attorney as well as a "consultant, surety, indemnitor, insurer, or agent." Fed. R. Civ. P. 26(b)(3)(A).

The DOJ determined that the subpoenaed documents constituted fact work product because at the time of the interviews multiple FCA *qui tam* actions had been filed. These interviews were conducted to: (a) allow DOJ attorneys to determine whether the Government should intervene in the cases; (b) provide the relevant information and evidence to litigate the intervened case; and (c) enable DOJ attorneys to make litigation decisions. (*See* Doc. No. 8-1, 8-2). Again, Plaintiffs do not actively dispute that the materials sought are work product. They did not object to the characterization of the materials as work product in their email exchanges with the DOJ and their motion focuses almost entirely on whether there was a showing of substantial need under Rule 26(b)(3). (*See* Doc Nos. 1-1, 1-6). Further, Plaintiffs only mentioned the possibility that some of these materials might not be work product when prompted by the Court. Therefore, the DOJ's decision that the materials sought were protected as fact work product was not arbitrary and capricious.

## *II. Have Plaintiff's shown a "substantial need" for the information?*

A party may obtain work product if they show a substantial need. *See* Fed. R. Civ. P. 26(b)(3)(A)(ii). Fact work product is "discoverable only upon a showing of both a substantial need and an inability to secure the substantial equivalent of the materials by alternate means without undue hardship." *Chaudhry v. Gallerizzo*, 174 F.3d 394, 403 (4th Cir. 1999). The party seeking work product discovery must "show, as to each document, substantial need and undue hardship." *See Republican Party of N.C. v. Martin*, 136 F.R.D. 421, 429 (E.D.N.C. 1991). Plaintiffs argue that the DOJ's conclusion that they have not shown substantial need is arbitrary and capricious. Plaintiffs contend the information sought is an appropriate subject of discovery and a significant

8

amount of time has passed since the creation of the interview summaries and deposition transcript. Plaintiffs additionally emphasize the "unique" facts here and that the defendants in the underlying case do not have possession of these documents, thus they cannot be obtained from them.[6] (Doc. Nos. 1, 10).

Again, the Court's review of whether the agency's decision is "arbitrary and capricious" must be deferential and narrow. Courts are "not to substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n,* 463 U.S. at 43. Yet, Courts must "engage in a 'searching and careful' inquiry of the record." *Ohio Valley Envtl. Coal. v. Aracoma Coal Co.*, 556 F.3d 177, 192 (4th Cir. 2009) (quoting *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416, 91 S. Ct. 814, 28 L. Ed. 2d 136 (1971)). Simply put, the arbitrary and capricious standard requires that agency action be reasonable and reasonably explained. After a careful inquiry into the record, the Court finds that DOJ considered Plaintiffs' requests and, applying the correct legal standard, reached a conclusion that is not arbitrary or capricious.

First, Plaintiffs have failed to show that the substantial equivalent of the information they seek could not be obtained by any other means without undue hardship. As the DOJ argues, what is relevant to the Plaintiffs is the information these interviewees have, not the precise interview summaries or the deposition. There are other means to obtain this information, such as by taking depositions or serving interrogatories. *See United States v. Bertie Ambulance Serv., Inc.*, No. 2:14-CV-53-F, 2015 U.S. Dist. LEXIS 83537, at *16 (E.D.N.C. June 25, 2015) (stating defendants had

---

[6] Given the nature of DOJ's investigations, it is likely that Defendants are in possession of the substantively equivalent information sought by Plaintiffs. Typically, counsel for interviewees take nearly verbatim notes of the interview, and subsequently share the details of the interview with counsel for other parties and witnesses through a joint defense agreement. Such information is likely protected by the common interest privilege. The Court is concerned about the inequity of Defendants having valuable information that cannot be obtained by Plaintiffs except by production of the requested summaries and transcript. DOJ is apparently unconcerned.

9

failed to meet their burden of showing undue hardship because, among other things, "[d]efendants have failed to depose any of the witnesses").

And, merely offering generalized statements that the witnesses will likely be unable to recall details about the alleged wrongdoing, while an entirely reasonable assumption, is insufficient to show undue hardship.[7] *See, e.g.*, *Jinks-Unstead v. England*, 232 F.R.D. 142, 147 (D.D.C. 2005) (holding a party had failed to show that he could not obtain the substantial equivalent of the document through other means when "the information sought was available to plaintiff through other discovery methods, such as interrogatories and depositions"). Also, Plaintiffs argue that this discovery process would be timely and expensive, but time and expense is not enough to show undue hardship. *Bertie Ambulance Serv., Inc.*, No. 2:14-CV-53-F, 2015 U.S. Dist. LEXIS 83537, at *16 (citing *Arney v. George A. Hormel & Co.*, 53 F.R.D. 179, 181 (D. Minn. 1971) ("the costs or inconvenience of taking the deposition is not in itself [a] sufficient showing to meet the 'undue hardship' requirements of the rule.")).

Second, substantial need is a more demanding standard than relevancy. *See Jinks-Unstead*, 232 F.R.D. at 147 ("mere relevance does not equate with a substantial need."); *Madanes v. Madanes*, 199 F.R.D. 135, 150 (S.D.N.Y. 2001) (holding that the "substantial need" requirement

---

[7] Plaintiffs contend the interview summaries could be used to refresh the memories of witnesses and could even be adopted in instances where the witnesses have little to no recollection of the events. However, it is important to note that these summaries are *not* the witnesses' direct statements. Rather, they are merely hearsay statements of the DOJ investigator or attorney about some but not all of what the witness said during the interview. Thus, they could not be offered as admissible evidence, and Plaintiff's apparent plan to have the witnesses "adopt" or use the statements as their own in the absence of any independent recollection of the underlying events risks allowing the statements to, in practical effect, be improperly used as substantive evidence. Therefore, while the Court does not reach any ruling as to the potential admissibility of a witness' adoption of the hearsay statement of a third party as their own, the questions related to the evidentiary force of these interview notes weighs against a finding that Plaintiffs have a "substantial need" for the information.

is satisfied only if the party seeking work product materials can show that the materials are "central to the substantive claims in litigation"). Relevancy is a requirement under Rule 26(b)(3)(A)(i) that is separate and distinct from substantial need. *See* Fed. R. Civ. P. 26(b)(3)(A)(i). Plainly, irrelevant information is never discoverable. *See* Fed. R. Civ. P. 26 ("Parties may obtain discovery regarding any nonprivileged matter that is *relevant* to any party's claim or defense") (emphasis added). Therefore, while the Court recognizes the potential relevance and value these documents may have to Plaintiffs' claims, if this Court found mere relevancy was sufficient, the exacting nature of the substantial need showing would be non-existent. Further, Plaintiffs failed to provide the DOJ with the required individualized explanation of relevancy regarding each document requested. *Republican Party of N.C.*, 136 F.R.D. at 429. Because Plaintiffs have the burden of showing particularized substantial need, Plaintiff's general statement of relevancy is insufficient.

Third, while the passage of time since the underlying incident is significant, it is not enough to show substantial need. *Bertie Ambulance Serv.*, 2015 U.S. Dist. LEXIS 83537, 2015 WL 3932167, at *7 ("the passage of time, standing alone, is not always sufficient to establish substantial need."). Although Plaintiffs cite four cases in support of the position that passage of time may be enough, they are distinguishable because in each of those cases the government was an adversarial party. Thus, the government would have had the benefit of using the work product against the adverse document-requesting party. *See United States ex rel. Landis v. Tailwind Sports Corp.*, 303 F.R.D. 419, 426 (D.D.C. 2014) ("The civil lawyers litigating this *qui tam* action have received a substantial advantage from having access to the fruits of the prior criminal investigation . . . and particularly in *qui tam* actions, fairness dictates that both sides have equal access to relevant witness statements developed by law enforcement in prior or parallel criminal investigations") (citation omitted)); *see also United States v. Cameron-Ehlen Grp., Inc.*, Case No. 13-cv-3003

11

(WMW/DTS), 2019 WL 1453063, at *6 (D. Minn. Apr. 2, 2019); *United States ex rel. Cairns v. D.S. Med., L.L.C.*, Case No. 1:12CV00004 AGF, 2016 WL 7437919, at * 6 (E.D. Mo. Dec. 22, 2016); *Miller* v. *Holzmann*, 2007 WL 779393 at *2 (D.D.C. March 8, 2007). Here, in contrast, the DOJ is not an adverse party in the underlying litigation. Consequently, there is no danger of the work product being used to disadvantage Plaintiffs.

As noted by Plaintiffs, some courts have held the passage of time can satisfy substantial need, recognizing the uniqueness of the statements at issue. *See, e.g.*, *Bowling v. Appalachian Elec. Supply, Inc.*, No. 3:13-cv-27347, 2014 U.S. Dist. LEXIS 49531, at *15 (S.D. W. Va. Apr. 10, 2014) ("[a]n account of an event given when fresh in the mind of the speaker is universally held to be more reliable than an account provided after the passage of time."). However, most of the cases that reach this conclusion involve statements given very shortly after an incident. In contrast, the statements at issue here were made months or years after the incident and thus their "uniqueness" or "irreplaceability" is diminished.[8] *See Garcia v. City of El Centro*, 214 F.R.D. 587, 595 (S.D. Cal. 2003) ("even those cases which hold that the mere passage of time is sufficient to establish substantial need, generally require that the protected statement sought in discovery have been taken shortly after the event took place") (citing *Hamilton v. Canal Barge Co., Inc*., 395 F. Supp. 975, 978 (E.D. La. 1974)).

In sum, the DOJ fully considered Plaintiffs' requests and, applying the appropriate legal standard, reached a conclusion that is not arbitrary or capricious. [9] While the Court acknowledges

---

[8] As discussed above, it is significant that the interview notes at issue are not the direct statements of the witnesses. Rather, the notes reflect the selective hearsay statements of the DOJ investigator or attorney about what the witness said during the interview. This further undermines any conclusion that the interview notes represent "unique" witness statements.

[9] The Court notes that Plaintiffs' arguments for production have a stronger foundation concerning the deposition transcript, which is a sworn statement of the deponent that may, unlike the DOJ

the period Plaintiffs were barred from taking discovery was unusually long, it is (unfortunately) hardly unique in the *qui tam* context. Substantial need is an exacting standard and the DOJ relied on the factors that Congress intended it to consider and offered a plausible explanation consistent with the evidence before it. Thus, the DOJ's conclusion that the Plaintiffs have not shown substantial need is not arbitrary and capricious and accordingly the Court will deny Plaintiffs' Motion to Compel.

## IV. ORDER

**NOW THEREFORE IT IS ORDERED THAT**:

Plaintiffs' "Motion to Compel" (Doc. No. 1) is **DENIED.**

**SO ORDERED ADJUDGED AND DECREED**.

Signed: March 9, 2022

Kenneth D. Bell
United States District Judge

---

interview notes, have independent evidentiary value. However, without any evidence that the transcript has been sought from the deponent the Court will uphold the DOJ's denial. If Plaintiffs make concrete efforts to obtain the information and fail and upon a renewed request DOJ refuses to produce the deposition then the Court will reconsider its denial at Plaintiffs' request.